**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAIEEDA DAVIS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ELWYN OF PENNSYLVANIA AND** | : | |
| **DELAWARE d/b/a ELWYN** | : | |
| | : | **NO. 25-06362** |

# MEMORANDUM OPINION

**Savage, J.** **November 19, 2026**

In this race-based discrimination and retaliation action brought under Title VII of the Civil Rights Act and 42 U.S.C. § 1981, plaintiff Saieeda Davis claims her former employer, defendant Elwyn of Pennsylvania and Delaware ("Elwyn"), disciplined and fired her because she is African American. Moving for summary judgment, Elwyn contends that Davis has not presented any evidence that her termination was motivated by race. Elwyn also argues that the retaliation claims fail because Davis cannot demonstrate a connection between her protected activity and any adverse employment action. Without disputing any facts, Davis contends that Elwyn's disciplinary explanations conceal race discrimination and that a factfinder must assess witness credibility to determine whether her protected activity played a role in her termination.

Because the undisputed facts do not support an inference of unlawful discrimination or retaliation against Davis for engaging in protected activity, we will grant Elwyn's motion for summary judgment.

## Background

Davis joined Elwyn in October 2021 as a Psychiatric Rehabilitation Program Supervisor at Welcome House ("WH"). She reported to Director Danielle Gasperone. Within two months, Alisa Calvo became Davis's supervisor and Director of WH and another Elwyn facility.[1] Effective May 1, 2024, Elwyn eliminated the WH Director position. The position was not filled after Calvo's departure.[2]

In December 2023, an audit conducted by Community Care Behavioral Health Organization, a nonprofit behavioral health managed care organization, identified compliance deficiencies at WH.[3] As a result, funding was being withheld pending submission of a corrective action plan.[4] Davis was assigned to work with Calvo to submit the plan by January 5, 2024.[5] After raising her voice at Calvo, Davis was removed from their collaboration meetings. The plan was ultimately submitted late on January 15, 2024.[6]

Davis's January 22, 2024 Interim Appraisal rated her "needs improvement" in all five categories and set four performance goals.[7] The appraisal identified concerns regarding her leadership, maintenance of compliant resident records, and refusal to provide expected coverage for an employee on medical leave.[8] Davis challenged the appraisal and met with Calvo and Senior Director Jennifer Goldstein on March 31, 2024

---

[1] Defendant's Statement of Undisputed Facts ¶ 2, ECF No. 13–2 ["DSUF"] (attached to Def.'s Mot. for Summ. J., ECF No. 13); Pl.'s Resp. to Defendant's Statement of Undisputed Facts ¶ 2, ECF No. 15–1 ["PRDSUF"].

[2] DSUF ¶¶ 7–9, 33–34; PRDSUF ¶¶ 7–9, 33–34.

[3] DSUF ¶ 10; PRDSUF ¶ 10.

[4] DSUF ¶ 12; PRDSUF ¶ 12.

[5] DSUF ¶ 13; PRDSUF ¶ 13.

[6] DSUF ¶ 17; PRDSUF ¶ 17; Saieeda Davis Dep. Tr. 107:11–18, 110:22–111:2.

[7] DSUF ¶¶ 18–19; PRDSUF ¶¶ 18–19.

[8] DSUF ¶ 24; PRDSUF ¶ 24.

to discuss the issues.[9] At the meeting, Davis apologized for her behavior and became "emotionally upset."[10]

Concerns about Davis's workplace behavior continued. In October 2024, Carol Pickens-Strong, a Certified Peer Specialist whom Davis supervised and who is also African American, complained that Davis belittled her in front of members following a workplace disagreement, leaving her feeling "disrespected, embarrassed, and unsafe." She requested a transfer.[11] Davis received verbal counseling on November 7, 2024, for inappropriate behavior toward an employee.[12]

On January 3, 2025, Davis filed an Equal Employment Opportunity Commission ("EEOC") charge alleging race discrimination and denial of a promotion.[13] But, she never applied for a promotion.[14]

On April 3, 2025, Davis received another verbal counseling about an email to a maintenance employee complaining that he "barely say[s] two words to [her]."[15] During the verbal counseling, Goldstein addressed Davis's emotional responses to workplace situations.[16]

Crozer Case Manager Jean Pryor reported that Davis engaged in verbally intimidating conduct, describing her as "out of control."[17] Pryor described Davis's behavior

---

[9] DSUF ¶¶ 28–29; PRDSUF ¶¶ 28–29.

[10] DSUF ¶ 30; PRDSUF ¶ 30.

[11] DSUF ¶¶ 38–39; PRDSUF ¶¶ 38–39.

[12] DSUF ¶ 40; PRDSUF ¶ 40.

[13] DSUF ¶ 42; PRDSUF ¶ 42.

[14] DSUF ¶ 42; PRDSUF ¶ 42; Saieeda Davis Dep. Tr. 125:1–16.

[15] DSUF ¶ 45; PRDSUF ¶ 45.

[16] DSUF ¶ 46; PRDSUF ¶ 46.

[17] DSUF ¶ 47; PRDSUF ¶ 47.

during a meeting as unusually aggressive and expressed concern that it could escalate to a physical level.[18]

These concerns culminated in an April 17, 2025 Final Written Warning, which incorporated an April 11 Major Progressive Disciplinary Action and documented disruptive conduct at a March 7, 2025 meeting attended by representatives of Crozer, Holcomb, and Delaware County.[19] The warning reiterated Elwyn's expectations concerning workplace conduct and supervisory standards. It expressly advised that another incident could result in termination.[20]

On June 13, 2025, Rakeisha West, who is also African American, submitted a complaint to Human Resources describing Davis's conduct following the final-warning meeting.[21] She stated that Davis sang "backstabber" at her and questioned whether she had provided information to management.[22] West also reported that Davis had made a WH client cry during a June 3, 2025 interaction, prompting an investigation.[23]

During the investigation, other employees confirmed that the client began crying after Davis entered the room and addressed the client so aggressively that it required de-escalation.[24] Davis acknowledged reprimanding the client and conceded that her "high pitch response" may have caught the client off guard.[25] The investigation concluded that

[18] DSUF ¶¶ 44–52; PRDSUF ¶¶ 44–52.

[19] DSUF ¶¶ 47–48; PRDSUF ¶¶ 47–48.

[20] DSUF ¶¶ 53, 56–57; PRDSUF ¶¶ 53, 56–57.

[21] DSUF ¶¶ 60–65; PRDSUF ¶¶ 60–65.

[22] DSUF ¶ 63; PRDSUF ¶ 63.

[23] DSUF ¶ 65; PRDSUF ¶ 65.

[24] DSUF ¶ 68; PRDSUF ¶ 68.

[25] DSUF ¶¶ 69–70; PRDSUF ¶¶ 69–70.

Davis had used verbal aggression toward the client in violation of Elwyn's policies.[26] As a violation of resident rights, the conduct constituted a major offense that alone warranted immediate termination.[27]

**Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585, 592 (3d Cir. 2018).

In examining a motion for summary judgment, we must view the facts in the light most favorable to the non-movant and draw all reasonable inferences in her favor. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (citing *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)). Disagreements over what inferences may reasonably be drawn from the facts, even undisputed ones, preclude summary judgment. *Revock v. Cowpet Bay W. Condo*. Ass'n, 853 F.3d 96, 112 (3d Cir. 2017) (citing *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 659 (3d Cir. 1993)).

---

[26] DSUF ¶ 71; PRDSUF ¶ 71.

[27] DSUF ¶ 73; PRDSUF ¶ 73.

## Analysis

Under the burden-shifting *McDonnell Douglas* framework, Davis must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). Establishing a prima facie case of discrimination "'is not onerous' and poses 'a burden easily met.'" *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

If the plaintiff fails to establish a prima facie case, the defendant is entitled to judgment as a matter of law. Whether a prima facie case has been established is generally a question of law for the court. *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (citing *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797–98 (3d Cir. 2003) (per curiam)).

If she succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07 (1993)). If the defendant satisfies its burden, the plaintiff must produce evidence from which a reasonable factfinder could conclude that the proffered reason for taking the adverse action was merely a pretext for intentional discrimination. *Id.* The final burden of production "merges with the ultimate burden of persuading [the jury] that [plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

To make out a prima facie case of race discrimination, Davis must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that

could give rise to an inference of intentional discrimination. *Qin v. Vertex, Inc.*, 100 F.4th 458, 473 (3d Cir. 2024).

Davis has satisfied the first three elements. As an African American woman, she belongs to a protected class. She was qualified for her position as Psychiatric Rehabilitation Program Supervisor. Her termination was an adverse employment action. It is the fourth requirement that Davis has not satisfied. She has not identified evidence that supports an inference of discrimination.

Davis is of the notion that she was treated unfairly because she is African American. But, she identifies no evidence, direct or circumstantial, connecting Elwyn's actions to her race. She asserts that she believed Elwyn discriminated against her throughout her employment and that its documentation portrays her as an "angry black woman" when she was "merely speaking her mind and trying to protect herself in the workplace."[28] Yet, she identifies no statement, conduct, or language supporting an inference that her race was a motivating or determinative factor in any disciplinary action Elwyn took.

Davis's unsupported feelings about Elwyn's actions are insufficient to raise an inference of discrimination. "Suspicion or subjective belief is insufficient to prove a claim of discrimination. There must be circumstances from which a reasonable juror could infer discrimination." *Kocher v. McDonough*, No. CV 21-921, 2022 WL 17858056, at *6 (E.D. Pa. Dec. 22, 2022), aff'd, 2023 WL 8469762 (3d Cir. Dec. 7, 2023). Nor can speculation defeat summary judgment. *Podobnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005).

---

[28] Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 6, ECF No. 15 [Pl.'s Opp'n].

Viewed in Davis's favor and drawing all inferences from the facts in her favor, the evidence does not connect her reprimands or termination to racial bias. In short, there is no evidence that race played any part in the adverse employment action. Therefore, we conclude she failed to establish a prima facie case.

Even if she made out a prima facie case, Davis has not shown pretext. Elwyn disciplined and terminated her for unacceptable work-related conduct, which is documented in her disciplinary record. That explanation satisfies Elwyn's burden to articulate a legitimate, nondiscriminatory reason.

Davis has not identified evidence permitting a reasonable factfinder to disbelieve Elwyn's stated reasons or to find that discrimination was more likely than not a motivating or determinative cause of its actions. *Grasty v. DaVita, Inc.*, No. 24-2584, 2025 WL 2388298, at *2 (3d Cir. Aug. 18, 2025).

To discredit Elwyn's explanation, Davis must expose "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" sufficient to render it unworthy of credence. *Whitmire v. Kvaerner Philadelphia Shipyard*, 340 F. App'x 94, 98 (3d Cir. 2009). Showing that Elwyn was mistaken is not enough. Its explanation must be "so plainly wrong that it cannot have been the employer's real reason." *Moses v. United States Steel Corp.*, No. 23-2605, 2025 WL 66348, at *2 (3d Cir. Jan. 10, 2025).

Davis argues that in every disciplinary incident, Elwyn accepted "the truth in its entirety from every witness except Plaintiff."[29] She also asserts that her repeated write-ups reflected racial bias and an effort to remove her from a position of authority because

---

[29] *Id.* at 8.

of her race.[30] Remarkably, she identifies no evidence undermining Elwyn's stated reliance on her work-related misconduct. In the context of employment discrimination claims, "conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment." *Taylor v. Cherry Hill Bd. of Educ.*, 85 F. App'x 836, 839 (3d Cir. 2004).

Nor does Davis identify any evidence that race discrimination more than likely motivated Elwyn. Such evidence may include prior discrimination against Davis or others, or more favorable treatment of similarly situated employees outside her protected class. *Vay v. Huston*, 725 F. App'x 112, 117 (3d Cir. 2018). Davis offers none. Her assertion that "[t]he truth is that Defendant was deliberately discriminating against Plaintiff because of her race" is a conclusion, not a factual basis for a claim of discrimination.[31]

Because Davis has not identified evidence supporting either an inference of discrimination or a finding of pretext, Elwyn is entitled to summary judgment on Davis's Title VII and § 1981 race-discrimination claims.

Davis's retaliation claims also fail. To establish a prima facie case of retaliation, Davis must demonstrate that: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her after or contemporaneously with her protected activity; and (3) there was a causal connection between her protected activity and the adverse employment action. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022) (quoting *Daniels v. School Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)).

---

[30] *Id.*

[31] *Id.*

Davis engaged in protected activity when she filed an EEOC charge alleging race discrimination in January 2025. *See* 42 U.S.C. § 2000e-3(a). Her termination constitutes an adverse employment action. Whether her filing the EEOC charge caused her termination is the issue.

Davis contends that she was terminated because she filed the EEOC charge and that a factfinder must assess witness credibility to determine whether the charge played any role in that decision. Davis identifies no evidence supporting a causal connection. Instead, the record documents intervening reports of misconduct:

- On March 7, 2025, representatives from Crozer, Holcomb, and Delaware County reported that Davis's "disruptive and loud interruptions" during a Welcome House meeting compromised the "safety and integrity of the environment."[32]
- On April 3, 2025, Davis received verbal counseling for inappropriate and unprofessional workplace behavior, including her interaction with another Elwyn employee.
- On April 11, 2025, Davis received a Major Progressive Disciplinary Action for "[i]nappropriate-verbally intimidating behaviors."[33]
- An investigation into Davis's June 3, 2025 interaction with a WH client found that she used verbal aggression that caused the client to cry and required de-escalation. The conduct violated Elwyn's policies and resident rights and constituted a major offense that itself warranted immediate termination.[34]

[32] DSUF ¶ 53; PRDSUF ¶ 53.

[33] DSUF ¶ 47; PRDSUF ¶ 47.

[34] DSUF ¶ 71; PRDSUF ¶ 71.

- On June 13, 2025, employee Rakeisha West complained about Davis to Human Resources where she alleged that following Davis's final-warning meeting, Davis sang "backstabber" at her and questioned whether she had provided information to management.[35]

Davis identifies no evidence connecting these reports, the resulting discipline, or her termination to the EEOC charge. Nor does she identify a specific credibility dispute bearing on retaliatory intent. Her assertion that a jury must assess credibility is not a substitute for evidence of causation. To the extent she also alleges a retaliatory failure to promote, she admits that she never applied for a promotion and identifies no evidence linking any promotion decision to her charge.[36]

Because Davis has not produced any evidence from which a reasonable jury could find a causal connection between her filing the EEOC charge and her termination, Elwyn is entitled to summary judgment on her retaliation claims under Title VII and § 1981.

**Conclusion**

We conclude the facts, viewed in favor of Davis, do not establish a prima facie case of race discrimination. Nor do they show a causal connection between her termination and her filing the EEOC charge necessary to make out a retaliation claim. Therefore, we will grant Elwyn's motion for summary judgment.

[35] DSUF ¶ 60; PRDSUF ¶ 60.

[36] DSUF ¶ 42; PRDSUF ¶ 42; Saieeda Davis Dep. Tr. 125:1–16.